## Fox v. Commonwealth.

(Decided February 12, 1924.)

### Appeal from Casey Circuit Court

1. Indictment and Information—Indictment for Murder Held Not Duplicitous.—An indictment charging each of several defendants with murder, first jointly, then each one in turn as principal firing the shot, while others with their malice aforethought aided and abetted, was not duplicitous or multifarious.

2.  Criminal Law—Instruction as to Proof that One an Accomplice
    Beyond a Reasonable Doubt Held Erroneous.—An instruction that,
    if jury "believe from the evidence beyond a reasonable doubt" that
    witness for the prosecution aided and abetted, he was an ac-
    complice, and conviction could not be had upon his testimony
    unless corroborated by other evidence tending to connect defend-
    ant with the commission of the crime was erroneous, being a de-
    fensive instruction in view of Criminal Code of Practice, section
    241.

3.  Criminal Law—Refusal to Permit Reargument After Additional
    Instruction Error.—Court erred in overruling motion of accused
    to reargue case after giving of additional instruction to jury on
    accomplice's testimony.

4.  Criminal Law—Instruction and Ruling of Court on Motion for Re-
    argument Held Prejudicial.—The giving of a defensive instruction
    on accomplice's testimony containing the phrase, "believe from
    the evidence beyond a reasonable doubt," and the overruling of
    a motion to reargue the case after the giving of this instruction,
    held, when considered together, so prejudicial as to warrant re-
    versal.

5.  Homicide—Accused Held Not Entitled to Directed Verdict.—In a
    prosecution for murder, accused held not entitled to a directed
    verdict in his favor.

CHARLES H. FAIR, ELI WESLEY and C. C. BAGBY for appel-
lant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K.
BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Reversing.

As a result of a difficulty between Albert Hudson and
John Foley, at a dance at the home of one Leonard Wil-
ham, in Casey county, in March, 1923, John Foley was
shot and killed with his own pistol. Who fired the shot
which took his life is the big question in the case. The
dance started about eight or nine o'clock p. m. The hom-
icide happened about midnight. There was a large crowd
present, including appellant Jess Fox, Bob Fox, Charlie
Fox and Albert Hudson. About ten or eleven o'clock p.
m. the deceased, John Foley, came in and participated in
the dance. Appellant, Jess Fox, and the other defend-
ants, Hudson, Charlie Fox and Bob Fox, had some whis-
key and some of them, especially Hudson, were more or
less under the influence thereof. At a time when Foley
was behaving himself as a gentleman Hudson approached
him and ran his hand through Foley's hair twice or
pulled it (the witnesses differ as to this). This offended

Foley, who struck Hudson. Immediately the two men engaged in a scuffle in the house, overturning the lamp and extinguishing the light, leaving the room in darkness. Following this a crowd gathered around Foley, who was apparently fighting them all as he backed out of the room into the front yard. A crowd of four or five persons followed him, Hudson among others. Outside the door Foley knocked Hudson down, striking him with a pistol which he had drawn from his pocket during the melee. Other persons rushed up and Foley struck them. In the meantime Foley was backing towards the front gate in the direction of his automobile. While the affray was in progress Tate, who was in company with Foley, got from Foley the latter's key to the automobile, Foley at the time saying in substance that he would be at the automobile in a minute. Tate went to the automobile and was standing on the running-board at the time of the killing. Immediately after Tate passed Hudson, again ran at Foley, who again struck at him with the pistol. At this time the pistol fell from of the hands of Foley and struck the ground. However, Hudson was knocked down. According to some of the evidence appellant, Jess Fox, picked up the pistol and instantly fired a shot at Foley which took his life, and he fell forward on his face. After this the crowd ran away; some of them rushed into the house and others ran towards the rear thereof. In the crowd on the outside, before the homicide, were one or more women and several men. The moon gave sufficient light to enable the parties to recognize each other. There is much confusion in the evidence as to who fired the shot that killed Foley. Many of the witnesses were unable to see who did the shooting. Others stated they did not see Jess Fox in the crowd at the time the shot was fired, while others say they saw him pick up the pistol. One or more say they saw him fire the pistol which took the life of Foley.

The jury returned a verdict finding appellant Jess Fox guilty and fixing his punishment at confinement in the penitentiary for a term of fifteen years. From the judgment entered upon this verdict he appeals, insisting upon a reversal for the following reasons:

"1. The court erred in overruling appellant's general demurrer to the indictment.

"2. Error of the court in overruling appellant's motion to reargue the case after the court had given an additional instruction.

"3. Refusal of the court to grant a continuance upon motion and affidavit of appellant.

"4. Refusal of the court to peremptorily direct the jury to find appellant not guilty.

"5. Errors in admission and rejection of testimony."

Appellant insists that the indictment is not only duplicitous but multifarious. The first count in the indictment accuses appellant Jess Fox, Bob Fox, Albert Hudson and Charlie Fox of the crime of willful murder, committed by shooting and killing John Foley with a pistol in March, 1923; the second count accuses all of the same persons of the crime of willful murder by killing John Foley, "committed as follows, to wit: the said Bob Fox did, on the — day of March, 1923, and before the finding of this indictment, in the county and Commonwealth aforesaid, unlawfully, willfully, feloniously and with his malice aforethought, kill and murder John Foley by shooting him, the said Foley, in the body with a gun, a pistol loaded with powder and leaden and steel balls and other hard substances, from which shooting and wounding the said Foley did then and there die; and the said Albert Hudson, Jess Fox and Charlie Fox were present at the time and near enough so to do and each did unlawfully and with his malice aforethought aid, assist, abet, counsel, encourage and command the said Bob Fox to so shoot, wound, murder and kill the said John Foley at the time the said Bob Fox did so, against the peace and dignity of the Commonwealth of Kentucky."

The third count in the indictment accuses all four of the defendants of the murder committed as it is charged by Albert Hudson firing the pistol shot and the other three defendants, with their malice aforethought, aiding and abetting the same.

The fourth count accusses the four defendants of the crime of willful murder, and recites that appellant Jess Fox fired the fatal shot and that the others aided and abetted him in the homicide.

The fifth count in the indictment names all the defendants as the murderers of John Foley, which murder, it is charged, was committed by Charlie Fox firing the fatal shot, while the others, of their malice aforethought, aided and abetted him in so doing. Each paragraph, except for the names, reads much the same as the paragraph above copied.

This character of indictment, appellant says, is duplicitous and multifarious, but in this he is in error. The indictment charges but one crime, that of murder. Each of the defendants is accused of the crime; first, jointly and then each one in turn as principal firing the shot, while the others, with their malice aforethought, aided and abetted. It was not duplicitous nor multifarious. We so held in the case of Ratliff v. Commonwealth, 182 Ky. 247, where we said:

"Hence, where several persons are indicted for murder and after a charge of guilt of the crime is made against all, in the accusative part of the indictment, the manner and form of its commission may be set out in different counts, one or more may be charged with having done the killing and the others accused with being aiders and abettors. An indictment of this kind is not subject to criticism for duplicity, and but one offense is charged, although the manner of its commission is set out in different modes. Com. v. Hargis, 124 Ky. 356; Thompson v. Commonwealth, 1 Met. 13; Angel v. Com., 14 R. 10; Cupp v. Com., 87 Ky. 35; Howard v. Com., 110 Ky. 356; Benge v. Com., 92 Ky. 1; Mulligan v. Com., 84 Ky. 229; Taylor v. Com., 28 R. 821, 90 S. W. 581; May v. Com., 153 Ky. 141; Anderson v. Com., 144 Ky. 215. In the instant case, the indictment charges but one offense, and that is the murder of John Baker, and in the accusative part of the indictment appellant, Rude Wooten, Nannie Wooten and Bud Couch are charged with the crime of murder, but each of the five counts alleges it to have been committtted by them in a different mode. The fact that the pleader unnecessarily in the second, third, fourth and fifth counts again alleges that the one accused, as the principal, in the first degree is guilty of murder, does not make the indictment bad for duplicity, as charging another offense, as the indictment charges but one offense, and the reiteration is but surplusage, which never renders an indictment insufficient. The allegations in each count relate to and must be read with the charge of murder made in the accusative part of the indictment. A person of ordinary understanding could not fail to understand that the indictment charges the appellant with the crime

of willful murder, and committed in one of the following modes:

"(1)    Jointly with Rude Wooten, Nannie Wooten and Bud Couch.

"(2)    As an aider and abettor of Rube Wooten.

"(3)    As an aider and abettor of Nannie Wooten.

"(4)    As a principal in the first degree, with the Wootens and Couch aiding and abetting him.

"(5)    As an aider and abettor of Bud Couch."

Wherefore we conclude that the indictment was sufficient.

2.    After the argument of counsel and the case had been submitted to the jury, the court recalled the jury, and upon its own motion gave instruction No. 6, which reads:

"If you believe from the evidence beyond a reasonable doubt that Charlie Fox was then and there present at the time of the killing, aiding, abetting and encouraging Jess Fox and Bob Fox to do said killing, then he is an accomplice and equally guilty with them or either of them and you cannot convict the defendant Jess Fox upon the testimony of Charlie Fox alone unless corroborated by other evidence tending to connect the defendant Jess Fox with the commission of said crime, and the corroboration will not be sufficient if it merely shows the crime was committed and the circumstances thereof."

Appellant objected to the instruction both as to form and substance, but his objection was overruled and the case again submitted to the jury.

The instruction is erroneous. In the first place it should not have contained the phrase "believe from the evidence beyond a reasonable doubt," for being in behalf of the defendant—a defensive instruction—the jury should have been directed that if it believed from the evidence that Charlie Fox was an accomplice, etc., that a conviction could not be had upon his testimony unless corroborated by other evidence tending to connect the defendant Jess Fox with the commission of the crime, and the corroboration will not be sufficient if it merely shows the crime was committed and the circumstances thereof, according to the provision of section 241 of the Criminal Code. However, we would not reverse the judgment upon

this ground alone. But this error taken in connection with the further error of the court in overruling the motion of appellant to reargue the case after the giving of this instruction to the jury, we feel was of such prejudicial character as to fully warrant a reversal of the judgment. The rule is, as often stated by this court, to allow a reargument of a case where a belated instruction is given, to the extent that the issues are affected by the belated instruction, if no further. Here the court gave the jury an instruction upon the effect of the evidence given by an accomplice, which was a material question in the case. The strongest witness against appellant being Charlie Fox, who is also indicted with appellant and who stated that he was present at the time of the shooting and saw appellant pick up the pistol from the ground after it had fallen from the hand of the deceased and instantly fire a shot at deceased, inflicting the wound which resulted in his death. If Charlie Fox was an accomplice then his evidence was not sufficient to support a verdict of guilty. We can see very clearly that in the argument of the case such an instruction might prove most important, and after instruction No. 6 was given upon the evidence of an accomplice under section 241 of the Criminal Code we think counsel should have been allowed to reargue the case, upon motion, at least to the extent of the effect to be given the evidence of an accomplice, and the court erred in overruling the appellant's motion for such reargument.

Upon another trial the court will give the usual instruction under section 241 of the Criminal Code. No doubt in the hurry of the trial, after a long day's work in an earnest effort to keep up with his docket by holding a night session, the able trial judge who presided inadvertently fell into the errors pointed out above. The appellant was not entitled to a directed verdict in his favor.

As the other alleged errors of which appellant complains are unlikely to occur upon another trial, we will refrain from discussing them.

For the reasons indicated the judgment is reversed for a new trial consistent herewith.

Judgment reversed.