[No. 26380.   *En Banc.*   July 26, 1937.]

The State of Washington, *Appellant,* v. Graydon
Blackley *et al., Respondents.*[1]

*H. W. Covalt* and *Frank W. Radley,* for appellant.

*Howard & Kindall,* for respondent Blackley.

*Walter B. Whitcomb* and *Sather & Livesey,* for respondent Bicknell.

Blake, J.—By an information filed by the prosecuting attorney of Whatcom county, the defendants Blackley and Bicknell were charged with the crime of manslaughter.   The charging part of the information reads as follows:

[1]Reported in 70 P. (2d) 799.

"On or about the 26th day of April, 1936, the said defendants, did unlawfully and feloniously by their acts and omissions kill a human being to-wit, one G. M. Caylor, by combined unlawful acts, in this, that while the said G. M. Caylor was riding in a Chevrolet coach automobile upon a public highway in said county and state, to-wit: the Pacific highway, near what is known as Giles Corner in said county, going in a southerly direction, said defendant Clarence B. Bicknell was driving an automobile stage on said highway, going in a northerly direction and said defendant Graydon Blackley was driving an automobile, to-wit: a Hudson coach automobile, on said highway in a northerly direction, to the rear of said stage; that as the automobile in which the said G. M. Caylor was riding, approached said stage, said defendant Clarence B. Bicknell unlawfully stopped said stage on said highway, without leaving a clear and unobstructed width of sixteen (16) feet upon the main travelled portion of said highway opposite said stage, and said defendant Graydon Blackley came up from behind, driving his automobile on said highway, while under the influence of intoxicating liquor, in a reckless and careless manner and as said stage stopped, the automobile driven by said defendant Graydon Blackley, struck the left rear end of said stage, veered to the left and collided with the automobile in which said G. M. Caylor was riding, wrecking the same and killing the said G. M. Caylor."

The defendants interposed motions to quash the information. The motions were granted "on the ground that the two defendants, Clarence B. Bicknell and Graydon Blackley, are improperly joined as defendants," the court being "of the opinion that the two defendants should not be tried jointly." The state appeals.

To sustain the ruling, respondents cite a number of authorities, from which they glean, as essentials to the joinder of defendants in an indictment or information, the following principles:

(1) That the offense must be joint; that is, it must be committed by the two defendants acting together, and not by the two defendants acting separately.

(2) That there must be a conspiracy, or at least concert of action, between the defendants.

(3) That defendants may not be joined in one information or indictment, if evidence against one is not admissible as against the other defendant. *State v. Lehman,* 182 Mo. 424, 81 S. W. 1118, 103 Am. St. 670, 66 L. R. A. 490; *Commonwealth v. Miller,* 2 Pa. Eq. Cas. 480; *State v. Winstandley,* 151 Ind. 316, 51 N. E. 92; *Rex v. Philips,* 2 Strange (Eng.) 921; *Commonwealth v. Elwell,* 2 Met. (43 Mass.) 190, 35 Am. Dec. 398; 14 R. C. L. 194.

We do not think, however, that the authorities cited are susceptible to the restrictive construction suggested by respondents. In any event, we are certain that a much broader view is taken by a great majority of the courts. The rule is that, where but one crime is charged in the indictment or information, all who participate in its consummation may be joined as defendants in the same information, even though their contributions to the result may be by different methods or acts. *Elliott v. State,* 26 Ala. 78; *Fowler v. State,* 50 Tenn. 154; *Commonwealth v. Sloan,* 4 Cush. (58 Mass.) 52; *Commonwealth v. Tower,* 8 Met. (49 Mass.) 527; *State v. Forcier,* 65 N. H. 42, 17 Atl. 577; *Volmer v. State,* 34 Ark. 487; *Ratliff v. Commonwealth,* 182 Ky. 246, 206 S. W. 497; *Fox v. Commonwealth,* 202 Ky. 41, 258 S. W. 950; *State v. McAninch,* 172 Iowa 96, 154 N. W. 399, Ann. Cas. 1918A, 559; *State v. Leeper,* 199 Iowa 432, 200 N. W. 732. In *Elliott v. State, supra,* the principle is stated:

"The general rule as to the joinder of defendants, as laid down in works of good authority, is, that where

the same evidence, as to the act which constitutes the crime, applies to two or more, they may be jointly indicted.—*Commonwealth v. Elwell*, 2 Met. 190. If the offence arise out of the same act, though the parties stand in different relations, they may be joined. If several be engaged in the commission of the same offence, though each may act a different part in the commission of that offence, they may be joined. 1 Waterman's Archb. Cr. Pl. 96; Wharton's American Cr. Law 110."

The following of our own cases are in harmony with this statement of the rule: *State v. Columbus*, 74 Wash. 290, 133 Pac. 455; *State v. Meyers*, 121 Wash. 579, 210 Pac. 4; *State v. Andrich*, 135 Wash. 609, 238 Pac. 638.

In the case at bar, there is but one crime charged— the killing of G. M. Caylor by the negligent acts of the defendants. Notwithstanding the defendants are not charged with the same acts of negligence, they are properly joined, since, under the facts alleged, the negligent acts of each contributed to the consummation of the crime.

Whether they should be tried separately or together is a matter to be addressed to the discretion of the court, under Rem. Rev. Stat., § 2161 [P. C. § 9377]. The fact that the court may believe they should not be tried together would not militate against the propriety of charging them in the same information. Nor is the joinder objectionable because, if tried together, evidence introduced may be admissible against one and not the other. In such contingency, the applicability of the evidence is to be controlled by proper instructions. *State v. Dilley*, 44 Wash. 207, 87 Pac. 133.

The order granting the motions to quash the information is reversed.

MAIN, HOLCOMB, BEALS, GERAGHTY, and TOLMAN, JJ., concur.

MILLARD, J. (dissenting)—I note the statement in the majority opinion to the effect that the authorities cited are not susceptible to the restrictive construction suggested by respondents, and that a much broader view respecting the propriety of joint indictments and informations is taken by a great majority of the courts. I have examined all of the authorities cited in the majority opinion to sustain the statement:

"The rule is that, where but one crime is charged in the indictment or information, all who participate in its consummation may be joined as defendants in the same information, even though their contributions to the result may be by different methods or acts."

In 31 C. J. 754, § 314, is the following, in support of the first sentence of which the editor cites *Elliott v. State,* 26 Ala. 78:

"When an offense is one which may be committed by more than one person at the same time, the several persons engaged in its commission may be jointly charged. Of this nature are indictments for larceny and many other offenses which may be committed by persons acting in concert. This rule applies, although defendants, some being officers and others individuals, are subject to different punishments for the offense. It is held on the one hand that several defendants whose separate acts together constitute a single crime may be joined, and on the other that, where the offense does not wholly arise from the joint act of all the defendants, but from such act joined with some particular act or omission of each defendant, without which it can be no offense, the indictment must charge them severally."

*Elliott v. State,* 26 Ala. 78, decided in 1855, was an appeal from a conviction on an indictment for gaming. It is true that the language of the court respecting the general rule as to the joinder of defendants is as quoted in the majority opinion. However, the judgment in that case was reversed and the cause re-

manded, on the ground that the indictment was fatally defective because it charged several defendants for several offenses committed by them independently of each other. Some of the offenses with which the defendants were charged were committed by some of the defendants at one time, and some by others of the defendants at a different time. The court said:

"We are, therefore, clear in the opinion, that an indictment would be fatally defective, if upon its face it charged several defendants for several offences committed by them independently of each other, some of which were committed by some of the defendants at one time, and some of which were committed by others of the defendants at a different time.

"Where these facts do not appear upon the face of the indictment, but do appear on the trial from the evidence, the defendants are as much entitled to the benefit and protection of the rules of law above laid down, as if the indictment had fairly stated the facts, and thus given them an opportunity to demur to it, or to move in arrest of judgment. The mere form in which an indictment may be drawn by the prosecuting attorney, ought never to be allowed to evade or destroy any substantial legal right of the defendant. However unobjectionable, on its face, an indictment may be, a conviction under it cannot lawfully result from proof of the indentical facts which would, if distinctly stated in it, vitiate the indictment, and enable the defendants, even after conviction, to arrest or reverse any judgment rendered on it against them."

In *Volmer v. State*, 34 Ark. 487, L. Volmer was indicted with Abe Volmer for following the occupation of a vender of ardent spirits without having paid the special taxes required. It is clear that the two Volmers were partners, and, in affirming the judgment, the court said:

"The rule is well settled that several may be jointly indicted for offenses arising wholly out of the same joint act, or omission; and it is the common practice to

indict jointly for the selling of intoxicating liquor without license, the unlicensed keeping of a ferry, and offenses of like character. *1 Bish. Crim. Proceed., 469; 1 Bish. Crim. Law, 957.*"

*Ratliff v. Commonwealth,* 182 Ky. 246, 206 S. W. 497, cited in the majority opinion, was a case in which Ratliff and three others were indicted jointly with the crime of murder in the first degree.

*Fox v. Commonwealth,* 202 Ky. 41, 258 S. W. 950, is another instance of an indictment charging each of several defendants jointly with murder.

In *Commonwealth v. Tower,* 8 Met. (49 Mass.) 527, the two defendants were jointly indicted of being common sellers of wine and spiritous liquors, without being first licensed. The court held that it was proper to jointly indict the two for the offense under the provisions of § 1, chapter 47, of the Revised Statutes of Massachusetts.

In *Commonwealth v. Sloan,* 4 Cush. (58 Mass.) 52, two partners in business as grocers were jointly indicted for selling intoxicants without a license. The court held that an allegation negativing a license to both of the partners might be taken to apply to the defendants individually as well as jointly, and that two or more persons may be jointly charged in the same indictment for selling intoxicants without a license.

The opinion in the case of *State v. Forcier,* 65 N. H. 42, 17 Atl. 577, quoted as follows, manifestly discloses that it should not have been cited to sustain the majority opinion:

"The constitutional authority of the legislature, in the exercise of the police power of the state to enact such regulations as are deemed reasonably necessary for the security and protection of the lives and health of all persons within the state, is unquestioned. *Pierce v. State,* 13 N. H. 536, 578; *State v. Freeman,* 38 N. H. 426; *State v. Marshall,* 64 N. H. 549. The duty of pro-

tecting its citizens is one of which the state cannot divest itself, and in the performance of this public duty the legislature enacted G. L., c. 133, upon which this indictment is found. The fee of five dollars, to be paid by the applicant for a license to engage in the business of an apothecary and druggist, is merely an equivalent for the service rendered by the commissioners in making the examination and issuing the license, and cannot be considered as a tax upon the business, or as depriving the applicant of his property without due process of law. *Smith v. Alabama,* 124 U. S. 465, 480; *Railway v. Alabama,* 128 U. S. 96.

"The defendants are properly joined in the indictment. If more persons than one engage in the doing of a criminal thing in such a way as to make each one guilty of the crime, they may be indicted jointly, not necessarily in several counts, but in a single count. 1 Bish. Cr. Proc., *s.* 467; 1 Whar. Cr. Law, *s.* 429; *Com. v. Sloan,* 4 Cush. 52.

"It would be no defence to the indictment that the defendants had in their employ a person licensed and registered as required by statute, who compounded the medicines called for by prescriptions of physicians. The language of the statute is,—'If any person shall engage in the business of retailing and vending, directly or indirectly, drugs, medicines, and chemicals, and in dispensing medicine, and compounding physicians' prescription without being registered . . . he shall be punished . . . ' G. L., c. 133, s. 8. Section 1 provides that it shall be lawful for any person to be an owner in the stock in trade in any druggist or apothecary shop, if he takes no part in conducting or keeping said shop. If the defendants took any part in conducting the business, they are liable to the penalty, although they had in their employ a person duly licensed, who compounded the medicines called for by physicians' prescriptions. It would be no defence to show that no actual harm has resulted from the defendants' violation of the statute. *State v. White,* 64 N. H. 49."

In *State v. McAninch,* 172 Iowa 96, 154 N. W. 399, Ann. Cas. 1918A, 559, defendants J. E. McAninch and

C. S. McAninch were charged with the same indictment for the crime of practicing medicine without a license. That case lends support to the majority opinion. However, I deem it unsound, and am in accord with the three dissenting judges, instead of with the four who hold the indictment good. The dissenting opinion reads as follows:

"I agree with the majority in all it has to say as to the general rule affirming the propriety of joining in one indictment all persons charged with having any hand in an offense, whether as principals or accessories; but I am equally convinced that there are offenses of such distinctly individual character as to exclude the possibility of accessories, and the case at bar affords an apt illustration of what I mean. If either defendant undertook the practice of medicine without a proper license, he was guilty of the offense charged. If both failed in this respect, then both were guilty, but both were not guilty of the same offense; that is, each was guilty (if at all) for his own failure to comply with the law, and not because of the failure of his codefendant.

"Let us suppose A is alone indicted and put on trial for violating the law by practicing medicine without license. The evidence discloses that he has never pretended to any ability to heal, but, on the contrary, has disclaimed all such accomplishments, and refused at all times to treat the sick and afflicted; but it does appear that he is associated with B, who does hold himself out as a physician and surgeon, and practices in that capacity without a license. It is further shown that A furnishes B an office, actively advertises B's skill and ability and receives a share of B's earnings. Now whatever other law of God or man he may be guilty of violating, A is not guilty of B's offense against the statute which prohibits the practice of medicine without a license.

"Again, A and B may form a partnership for the practice of medicine. Both hold themselves out as physicians and practice as such. It happens, however, that, while A has a license regularly procured, B has

none.   Undoubtedly, B is guilty of violating the law. But is A guilty?  I do not believe that any member of the majority would so hold; yet, if the theory of the law which sustains this indictment is correct, and the offense is one which can be jointly committed,—one in which there is a possibility of accessories who may be punished as principals,—there is no way for him to escape, although admittedly he was, at all times, a licensed practitioner.  The absurdity of the proposition is apparent.  Whatever may be the practice elsewhere, our statute affords no authority for prosecuting in one indictment two or more defendants charged with distinct offenses, and where this is attempted, the courts should not hesitate to declare such indictment invalid."

*State v. Leeper,* 199 Iowa 432, 200 N. W. 732, is another instance where a defendant was jointly indicted with two others charged with murder in the first degree, and it is clearly not in point.

In *Fowler v. State,* 50 Tenn. 154, the defendant and one other were jointly indicted for assault and battery upon three persons.  Their conviction was sustained, the opinion of the supreme court reading as follows:

"The indictment in this case, charges two persons with committing an assault and battery upon three, and it is insisted that the Circuit Court erred in refusing to quash it upon motion, because three offenses are thereby embraced in one count.  It is neither a legal nor physical impossibility that two persons, by one and the same act, could commit the same identical offense. Mr. Russell says: 'It was formerly holden that a person could not be prosecuted on one indictment for assaulting two persons, each assault being a distinct offense.  But the case has subsequently been treated as one which was not well considered; and the court said: "Can not the king call a man to account for a breach of the peace, because he broke two heads instead of one?" '  I Russ. on Crimes, 5th Am. ed., 759.  So, 'It has been said that a person could not be indicted for assault on two distinct parties in the same indictment;

but this doctrine is now exploded.' 2 Chit. Cr. Law, Riley's ed., 582, in note citing 2 Ld. Raym., 1572; 2 Burr., 984. See, also, 1 Waterman's Archb. Cr. Pr., 314, 315."

I do not agree with the majority that the foregoing authorities cited by the majority sustain their opinion.

*State v. Columbus,* 74 Wash. 290, 133 Pac. 455, is clearly correct. That was a case where two partners were charged with a single crime of accepting the earnings of a common prostitute. It is indeed distinguishable in principle from the case at bar.

In *State v. Meyers,* 121 Wash. 579, 210 Pac. 4, the defendant and three others were charged in the information severally and individually with bootlegging, practically in the language of the statute. A reading of the opinion in that case will disclose that we held that, as the uncontradicted evidence showed that the *appellants acted in concert* throughout, and as we could not conceive that they suffered any prejudice from the overruling of their demurrer to the information, and, further, as the information charged but a single crime, and that practically in the language of the statute, the demurrer to the information was properly overruled.

*State v. Andrich,* 135 Wash. 609, 238 Pac. 638, is manifestly inapposite. We held that, under the statute (Rem. Comp. Stat., § 7339), which provided for increased punishments for second and third convictions for violation of the liquor laws and made it the duty of the prosecuting attorney to allege the prior convictions, the first offender jointly liable for the misdemeanor is not prejudiced by an information against a co-defendant alleging two prior convictions making his act a felony. In the absence of a statute providing therefor, it would have been error to have alleged in the information the prior convictions, even if defendant had been guilty of like offenses and been convicted

thereof prior to the commission of the crime of which he was charged in the information in the case cited. It should also be borne in mind that the information in that case charged the two defendants, who were husband and wife, with the unlawful possession of intoxicating liquor with intent to sell the same. That the information could have correctly charged them jointly with the crime, cannot be gainsaid.

Where death is the result of an occurrence, unanticipated by the defendant, but which arose from his negligence, his criminal responsibility depends upon whether the injury which caused the death was the natural and likely consequence of defendant's conduct. If it was, the defendant is subject to indictment or information; if it was not, he cannot be properly charged with a penal offense. Wharton, Criminal Law, § 1003.

Whose negligence—the negligence of which of the two respondents—was the proximate and efficient cause of the death of G. M. Caylor?

In *Reg. v. Ledger,* 2 F. & F. (Eng.) 857, it was held that the negligence of a defendant is not the proximate cause of death where the negligence of some other person intervenes between his act or omission and the fatal result. In *People v. Scanlon,* 132 App. Div. 528, 117 N. Y. Supp. 57, it was held that the fact that another element may have contributed will not relieve defendant if his act was the proximate and efficient cause of the death.

The information in the case at bar attempts to charge a commission of a crime by alleging that death was caused by defendants Blackley and Bicknell when each was engaged in an unlawful act. The alleged unlawful act of Bicknell was that he stopped the stage on the highway without leaving a clear and unobstructed width of sixteen feet upon the main traveled portion

of the highway opposite the stage, as required by the statute (Rem. Rev. Stat., § 6362-47 [P. C. § 196-47]). The alleged violation of law by Blackley is that of driving when intoxicated and in driving in a reckless manner; that is, Blackley is charged with the violation of two sections of the statute—Rem. Rev. Stat., §§ 6362-51 and 6362-45 [P. C. §§ 196-51, 196-45.].

"A joint indictment may be found where the same evidence as to the act which constitutes the crime applies to all the persons indicted, and several persons may be indicted jointly for offenses arising wholly out of the same joint act. There is no objection to such joinder because the fact, proved against two or more, constitutes a distinct species of legal and technical offense as to each. So one may be charged with the principal offense and another as accessory before the fact, in the same indictment. But when the offense charged does not wholly arise from the joint act of all the defendants, but from such act joined with some personal and particular defect or omission of each defendant without which it would be no offense, the indictment must charge them severally and not jointly." 14 R. C. L. 194, § 39.

The rule is to permit the joinder of defendants in one indictment or in one information. It is essential that the offense be joint, in other words, that the two defendants acting together, and not acting separately, committed the offense charged. There must be at least concert of action between the defendants. The defendants may not be joined in one information or indictment if the evidence against one is not admissible as against the other defendant or defendants.

There is no charge or allegation of concerted action. All that is charged is that the crime was the result of commission of certain independent or unlawful acts by the two defendants. Blackley and Bicknell did not act together prior to the collision. Bicknell was not a passenger in Blackley's automobile, nor was he a

member of Blackley's family. He did not own the automobile, and he had no control over the automobile or its driver. There is nothing disclosing that the two defendants had ever met. Clearly, the recklessness charged is an independent matter of Blackley.

To prove the offense as charged in the information, it will be necessary to prove commission of an unlawful act by Blackley, with which Bicknell had nothing to do and with which he could have nothing to do. Evidence of the commission of either or both of the unlawful acts of drunkenness or recklessness on the part of Blackley, with which Bicknell had nothing to do, would certainly not be admissible to prove the alleged unlawful act of Bicknell, nor would evidence of the alleged unlawful act of Bicknell be admissible to prove that Blackley was driving recklessly and was operating his automobile while intoxicated.

It follows that the two defendants, Blackley and Bicknell, may not be joined in the information of the case at bar, under the rule that, where the evidence against one is not admissible as against the other defendants, the defendants may not be joined in one information or indictment.

The trial court exercised its discretion under Rem. Rev. Stat., § 2161 [P. C. § 9377], in granting the motion to quash the information for misjoinder. Such a motion is addressed to the discretion of the trial court. The guiding rule in the disposition of such a matter is that the court shall consider whether some of the defendants may be prejudiced by having evidence applicable to either of the defendants so involve them as to react to their prejudice with the jury or injuriously affect their right to peremptory challenges.

*State v. Bashor*, 175 Wash. 230, 27 P. (2d) 121, is only one of a number of authorities which hold that the granting of a separate trial to defendants jointly in-

formed against is a matter within the discretion of the court, and that the trial court's disposition of a request by the defendant for a separate trial will not be disturbed except for abuse. In the case cited, we said:

"It is first contended that the trial court erred in not granting the appellant a separate trial. This motion was based on the assumption that the evidence as to the two parties charged would be different. Rem. Rev. Stat., § 2161, provides that, when two or more defendants are informed against jointly, 'any defendant requesting it may, in the discretion of the trial court, be tried separately.' It thus appears that the statute leaves the question to the discretion of the trial court, and this court will not disturb that discretion in the absence of a showing of abuse thereof. *State v. Ditmar,* 132 Wash. 501, 232 Pac. 321; *State v. Baker,* 150 Wash. 82, 272 Pac. 80."

The foregoing sustains the position of the respondents in the case at bar. After all, if this court will not, on the appeal, disturb the discretion of the trial court, in the absence of a showing of abuse of discretion, in refusing to grant a separate trial to two defendants who are informed against jointly, it would appear that, where the state appeals from a ruling of the trial court granting a separate trial, this same rule should obtain.

In the dissenting opinion in *Hagerman v. Seattle,* 189 Wash. 694, 66 P. (2d) 1152, the rule of the "modern trend" is invoked, and the statement is therein made to the effect that, in the final analysis, all decisions of judicial tribunals depend upon the viewpoint—how could it possibly or properly be otherwise—of a majority of the court in any particular case. It may be that the hue and cry against defendants in criminal cases induce disregard of the constitutional rights of an accused and that, because of such hysteria, appellate tribunals repeal legislative enactments which vest superior courts with discretion in passing on motions to quash informations for misjoinder or motions for a

separate trial. If that be the modern trend, I choose to not be up-to-date.

In the case at bar, the discretion was wisely exercised and should be approved by this court, as it will afford to the respondents the constitutional right to a fair and impartial trial and each to be convicted on proof of his own acts, not affected by the atmosphere of guilt which may surround the other respondent tried before the same jury. I repeat there is no showing of an abuse of discretion by the trial court.

In affirming the judgment, we will not have disturbed a discretion which has not been abused by the trial court. We will have remained within our own province, and the respondents will have a fair trial, to which they are entitled under the constitution and which the trial court was convinced, as I am, they could not have if they were tried together. Whether they may have a fair trial, to which they are entitled under the constitution, depends upon the viewpoint of a majority of this court, and properly so, as the question to be determined is a judicial one.

The judgment should be affirmed.

ROBINSON, J. (dissenting)—Without endorsing all that is said in the dissenting opinion of Millard, J., I concur in his conclusion that the judgment should be affirmed.

STEINERT, C. J. (dissenting)—In my opinion, the information charged *separate and successive* acts, and not *combined* acts. The element of mutual participation in a single crime is wholly lacking. The separate acts of the two defendants are related in point of time, but not in substance or essence. The trial court therefore not only exercised a wise discretion, but followed what I conceive to be the proper interpretation of the authorities cited in both of the foregoing opinions.